COURT OF APPEALS OF VIRGINIA


Present:   Judges Haley, Alston and Senior Judge Clements
Argued at Alexandria, Virginia


LUIS ENRIQUE ESCOBAR TORRES

                                                    MEMORANDUM OPINION* BY
v.      Record No. 0650-09-4                  JUDGE ROSSIE D. ALSTON, JR.
                                                         NOVEMBER 2, 2010
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                          Jane Marum Roush, Judge

            Teresa E. McGarrity (Neal Goldberg; Office of the Public Defender,
            on brief), for appellant.

            Gregory W. Franklin, Assistant Attorney General (Kenneth T.
            Cuccinelli, II, Attorney General, on brief), for appellee.


        Following a jury trial, Luis Enrique Escobar Torres (appellant) was convicted of felony

sexual penetration with an animate object, in violation of Code § 18.2-67.2(A)(1).  On appeal,

appellant challenges the trial court's subject matter jurisdiction.  For the following reasons, we

affirm.

I.  Background[1]

        On June 21, 2008, appellant penetrated the vagina of his girlfriend's six-year-old niece

(victim) with his finger.  The assault occurred at the apartment of victim's grandmother, with whom

_____

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

        [1] As the parties are fully conversant with the record in this case and because this
memorandum opinion carries no precedential value, this opinion recites only those facts and
incidents of the proceedings as are necessary to the parties' understanding of the disposition of this
appeal.

appellant, his girlfriend, and their young son were living. Victim's mother (mother) testified that the apartment was in "Annandale."

Fairfax County Police Department officers investigated the case. Detective N.M. Christian testified that the investigation "started down [in] Prince William County, . . . and when they realized that they didn't have jurisdiction they then contacted Fairfax. So [victim] traveled from Prince William to Fairfax, which is where I met her at the SANE exam." The Commonwealth's attorney and Detective Christian engaged in the following dialogue during the trial:

Q. Did there come a point in time when you became involved in an investigation involving this defendant?

A. Yes.

Q. Did you have occasion to find out where this witness was living at the time of your investigation?

A. Yes.

Q. Where was that?

A. Wadsworth Court. That's in Fairfax County.

Q. Did you have occasion to find out who [sic] he was living with?

A. Yes.

Q. Who was he living with?

A. He was living with the victim's grandmother and the victim's aunt.

After arresting appellant, Detective Christian interviewed him, and the interrogation was recorded. The recording of the interview was admitted into evidence and played for the jury during the trial. The following excerpt from the interview is pertinent to the instant analysis:

Detective Christian: What country are you from?

[Appellant]: El Salvador.

Detective Christian: How many years have you been in the United States?

[Appellant]: Three years. I'm gonna be [sic] three years. I'm not three years now, but I'll be three years in the United States [sic].

Detective Christian: Did you live anywhere else in the United States other than Virginia?

[Appellant]: Yes.

Detective Christian: Where?

[Appellant]: North Carolina, but only for a week.

Detective Christian: One week?

[Appellant]: Yeah.

Appellant's girlfriend, victim's aunt, also testified at trial. She testified that she, her son, and her mother, victim's grandmother, shared an apartment with appellant. She stated that appellant had been living with her for approximately one year when victim reported that appellant committed assault.

The jury found appellant guilty of felony sexual penetration with an animate object, in violation of Code § 18.2-67.2(A)(1). This appeal followed.

## II. Analysis

On appeal, appellant challenges the trial court's subject matter jurisdiction. He argues that the Commonwealth failed to prove that the offense occurred in the Commonwealth of Virginia.

"[O]bjections to subject-matter jurisdiction may be raised at any time and are not waivable." Owusu v. Commonwealth, 11 Va. App. 671, 672, 401 S.E.2d 431, 431 (1991) (citing Commonwealth v. Smith, 230 Va. 354, 361, 337 S.E.2d 278, 281-82 (1985)).

> The criminal jurisdiction of the circuit courts is specified in Code §§ 19.2-239 and 17.1-513. Code § 19.2-239 grants the circuit courts jurisdiction in criminal cases for "all presentments, indictments and information for offenses committed within their respective circuits." Code § 17.1-513 provides the circuit courts with jurisdiction over all felonies committed in the Commonwealth.

Thomas v. Commonwealth, 36 Va. App. 326, 330 n.1, 549 S.E.2d 648, 650 n.1 (2001). "The jurisdictional grant set forth in Code § 19.2-239 empowers the circuit court to try charges relating to offenses committed within the Commonwealth. The Commonwealth's jurisdiction over those offenses is essential to the exercise of that jurisdiction." Id. at 332, 549 S.E.2d at 651. In other words, "'[e]very crime to be punished in Virginia must be committed in Virginia.'" Moreno v. Baskerville, 249 Va. 16, 18, 452 S.E.2d 653, 655 (1995) (quoting Farewell v. Commonwealth, 167 Va. 475, 479, 189 S.E. 321, 323 (1937)).

"Subject matter jurisdiction 'must affirmatively appear on the face of the record, that is, the record must show affirmatively that the case is one of a class in which the court rendering the judgment was given cognizance.'" Thomas, 36 Va. App. at 333, 549 S.E.2d at 651 (quoting Owusu, 11 Va. App. at 673, 401 S.E.2d at 432 (citation omitted)). Direct or circumstantial evidence may be used to prove the offenses occurred within the Commonwealth. Owusu, 11 Va. App. at 673, 401 S.E.2d at 432.

The evidence showed that appellant sexually assaulted victim during victim's visit to her grandmother's apartment in Annandale. The evidence also showed that at the time of the assault, appellant lived with victim's aunt in victim's grandmother's apartment. Appellant argues that the Commonwealth failed to affirmatively show that the grandmother's apartment was located within the Commonwealth of Virginia. He argues on brief that "[t]he only reference to a location positively identified as being in the Commonwealth of Virginia related to the residence of the complaining witness and her mother."

- 4 -

We disagree with appellant's argument. During the direct examination of Detective Christian, the Commonwealth's attorney asked Detective Christian if she had been "involved in an investigation involving *this defendant*." (Emphasis added). Detective Christian responded, "Yes." Then the Commonwealth's attorney asked, "Did you have occasion to find out where *this witness* was living at the time of your investigation?" (Emphasis added). When the detective responded affirmatively and provided the location, the Commonwealth's attorney asked her "who [sic] *he* was living with?" (Emphasis added). Detective Christian responded, "He was living with the victim's grandmother and the victim's aunt." At this point in the trial, the only witnesses who had testified were victim, mother, and the male officer who had served as the Spanish-English translator for Detective Christian.

Viewing the colloquy as a whole, it is clear the Commonwealth's attorney's references to "this defendant," "this witness," and "he" all refer to appellant. Appellant argues that "this witness" refers to either victim or her mother. However, considering the context of the question, and because the Commonwealth's attorney's used "the defendant" and "he" in her first and third questions, respectively, it is clear that this line of questioning all related to appellant, despite the fact that the Commonwealth's attorney referred to him as "this witness" in the second question.[2]

---

[2] This was not the only time during the trial that the Commonwealth's attorney misspoke. While attempting to impeach appellant's girlfriend, victim's aunt, the Commonwealth's attorney referred to appellant's girlfriend as "this Defendant":

> [Commonwealth's attorney]: Your Honor, this is going to go to impeachment of what this Defendant has testified to. It is not for the –
>
> The Court: You mean this witness?
>
> [Commonwealth's attorney]: Yes.
>
> The Court: You said this Defendant.

See <u>Washington v. Commonwealth</u>, 228 Va. 535, 547 n.3, 323 S.E.2d 577, 585 n.3 (1984) (concluding that the police officer either "inadvertently misspoke or that the transcript contains a typographical error" when the testimony in question was at variance with the police officer's testimony as a whole and the testimony of the defendant).

Additionally, appellant admitted during the interrogation that the events in question occurred at the apartment where he resided with victim's grandmother, his girlfriend, and his son. During this same interrogation, appellant stated that he had lived in the United States for almost three years. In response to Detective Christian's question, "Did you live anywhere else in the United States other than Virginia?," appellant responded, "Yes . . . North Carolina, but only for a week." The context of this exchange shows that appellant's brief sojourn to North Carolina was in the past and that at the time of the offense he resided in Virginia. This conclusion is supported by appellant's girlfriend's testimony that appellant had been living with her for approximately one year when the assault happened.

Considered as whole, these facts and circumstances proved that the crimes occurred in Fairfax County, a locality within Virginia. Therefore, the evidence established that the trial court had territorial jurisdiction to try appellant for the charged offense. Accordingly, appellant's conviction is affirmed.

<u>Affirmed.</u>

---

[Commonwealth's attorney]: This witness. I'm sorry, this witness.

However, on that occasion, the trial court clarified the Commonwealth's statement.